IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RICHARD MORRIS and YVONNE MORRIS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 05-00791-CV-W-SOW ) |
| NOVASTAR MORTGAGE, INC., COLUMBIA MORTGAGE, and LAURA T. WOODHEAD, d/b/a/ Columbia Mortgage, | ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

Before the Court is Defendant Novastar Mortgage, Inc.'s Motion for Summary Judgment (Doc. # 22), defendant's suggestions in support, plaintiffs' suggestions in opposition, and defendant's reply. For the reasons stated below, defendant's motion is denied.

I. Background

Plaintiffs Richard and Yvonne Morris's Amended Complaint seeks relief from an alleged "predatory mortgage loan" arranged by the Defendants. The Amended Complaint alleges four Counts against defendant NovaStar Mortgage, Inc. ("NovaStar"): (1) violation of the Home Ownership and Equity Protection Act; (2) violation of the Truth in Lending Act; (3) fraud; (4) violation of the Missouri Merchandising Practices Act; and (5) negligent misrepresentation. Plaintiffs name NovaStar, Columbia Mortgage ("Columbia"), and Laura T. Woodhead, doing business as Columbia Mortgage, as defendants. Pursuant to Federal Rule of Civil Procedure 56, defendant NovaStar moves the Court for an order granting summary judgment in favor of NovaStar and against plaintiffs on all Counts of plaintiffs' First Amended Complaint for

Damages.

The uncontroverted material facts relevant to the pending motion are as follows: Plaintiffs reside at 5137 Olive Street, Kansas City, Jackson County, Missouri. Apparently a representative from Columbia contacted the Morrises via telephone and informed Mr. Morris that it was checking with various lenders on his behalf to find a competitive interest rate to refinance his home mortgage, with lower monthly payments, and lower-cost homeowner's insurance. These calls were unsolicited. Mr. Morris accepted certain terms that were represented to him by Tracie Trussell of Columbia and subsequently signed a loan application, Good Faith Estimate, Truth in Lending Disclosure, and Mortgage Loan Origination Agreement. A copy of all documents have been submitted to the Court. The loan closing took place on July 22, 2004. Mrs. Morris was ill and hospitalized in Jackson, Mississippi at the time of the closing. Mr. Morris had executed a Power of Attorney and was acting as an attorney-in-fact for Mrs. Morris with regard to these transactions.

There is a disagreement among the parties as to what representations were made by Columbia and NovaStar.[1] There are also further disagreements as to what documents Mr. Morris actually received and signed. It is undisputed that Mr. Morris was not given copies of the documents he signed prior to the July 22, 2004 closing. It turns out that Mr. Morris was given an undesirable loan, the terms of which he was not aware until he went to the closing. The initial interest rate on the loan was not 8.05%, which Mr. Morris contends he agreed to, but instead was 10.5% with an APR of 11.287%; that the loan had a variable interest rate; Mr. Morris was

---

[1]Even though NovaStar, not Columbia, was the defendant who filed the motion for summary judgment, Columbia and Laura T. Woodhead filed a response to plaintiffs' suggestions in opposition to NovaStar's motion for summary judgment, which the Court will consider.

2

Case 4:05-cv-00791-SOW   Document 38   Filed 09/19/06   Page 2 of 13

charged a $1,657 loan origination fee and a $500 processing fee, as well as a $575 charge for the appraisal of the home. It is undisputed that Mr. Morris signed all documents that were presented to him at closing on behalf of himself and his wife as her attorney-in-fact.

NovaStar's main contention in its motion for summary judgment is that all alleged misrepresentations were made by Columbia, not NovaStar. NovaStar points to the fact that the documents plaintiffs have put in issue were not prepared, nor were they signed by NovaStar.

It is uncontroverted that Mr. Morris received a Truth in Lending Disclosure at the loan closing on July 22, 2004, which reflected that the APR was 11.287%, not 8.05% previously disclosed. Columbia informs the Court that this is because of newly discovered information relevant to the loan such as the Morrises default and a $1,000 judgment against them. It is undisputed that Mr. Morris received and signed the Note and related loan documents that disclose the loan's variable interest rate at the closing on July 22, 2004. He was not given, nor did he sign these documents prior to closing.

Regardless, the most important information and facts for the Court to focus on for the purposes of this motion are the actions of NovaStar.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The party who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a properly supported motion for summary judgment may not rest upon the allegations in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Id. Summary judgment must be entered when a party fails to make a sufficient factual showing to establish an essential element of the party's claim upon which it will bear the burden of proof at trial. E.E.O.C. v. Woodbridge, Corp., 263 F.3d 812, 814 (8th Cir. 2001).

### III. Discussion

As NovaStar moves for summary judgment on all Counts alleged against it, the Court will consider each Count in turn.

A. Count I - Violation of the Home Ownership and Equity Protection Act (HOEPA)

"TILA is a remedial statute, enacted in part 'to protect the consumer against inaccurate and unfair credit billing,' 15 U.S.C. § 1601(1) (2000), and should be interpreted broadly to effectuate its stated purpose." Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 918 (8th Cir. 2000). Congress enacted the HOEPA amendments to TILA in 1994. HOEPA provides additional consumer protections and controls the disclosure and terms of high cost loans to protect borrowers. HOEPA defines certain mortgages as high cost by virtue of a "points and fees" trigger. 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32(a). A loan is examined to determine if the points and fees make a mortgage a HOEPA loan, such that certain disclosures must be made. Specifically, if a mortgage falls within the protection of the HOEPA provisions of TILA, a creditor is required to disclose the annual percentage rate ("APR") of the loan, the amount of the monthly payment and give the following advance disclosures to the borrower, in conspicuous type size, at least *three business days* before consummation of the mortgage transaction:

(A) You are not required to complete this agreement merely because you have recieved

these disclosures or have signed a loan application.

(B) If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.

<u>See</u> 15 U.S.C. § 1639(a) & (b)(1). For a mortgage to come within the protection of HOEPA, the APR at consummation of the transaction, the total points and fees payable by the borrower must exceed eight-percent (8%) of the total loan amount or $400, whichever is greater. 15 U.S.C. § 1602(aa)(1)(A) & (B). To determine if points and fees make a mortgage a HOEPA loan, you have to examine TILA's Regulation Z, which defines "points and fees." A "finance charge" is defined as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a).

Once a calculation of the total points and fees is reached, the "total loan amount" is determined by taking the amount financed, and deducting any point or fee that is financed and has not already been included in the finance charge. 12 C.F.R. § 226.32(A)(1)(ii). If the total points and fees exceed 8% of the total loan amount, the loan is covered by HOEPA.

In this case, plaintiffs allege that certain charges constituted a "fee" under HOEPA and trigger the advance disclosures required by 15 U.S.C. § 1639. Apparently no advance disclosures were given to the Morrises prior to the date of closing, at least not three business days before consummation of the mortgage transaction. The charges that plaintiffs allege constituted a fee point and fee calculation that NovaStar failed to include are: (1) the $1,000 Jackson County small claims court judgment against the Morrises; (2) the $575 appraisal fee paid to and retained by Columbia; and (3) the $37 excess fee charged for filing.

5

1. $1,000 Jackson County Judgment

It is undisputed that the $1,000 judgment is an existing debt of the Morrises. Based on the language of the federal regulation, the Court finds that the judgment is a finance charge as it falls within the definition set forth in 12 C.F.R. § 226.4. The debt was a charge payable directly by Mr. Morris that was required, or was a condition of the extension of credit. A loan qualifies for HOEPA protection only if the total points and fees are payable by the consumer at or before closing. See 15 U.S.C. § 1602(aa)(1)(B). The Court focuses on the language of the Regulation that describes the charge as "payable." It is undisputed that the $1,000 charge was paid from the loan proceeds and caused the interest rate offered to the Morrises to be raised. To the Court, this means that there was an outstanding judgment which the parties knew was owed by the Morrises at closing and was "payable" over the course of the loan.

Even though Regulation Z provides examples of charges that are and are not finance charges, this list is not exclusive, and is otherwise clear that a charge is a finance charge if payment is required by the lender as an incident to or condition for granting the loan. NovaStar does not contend that it would have extended credit to the Morrises if the Jackson County judgment was not included in the terms of the loan.

Accordingly, the $1,000 is a finance charge that should have been included in the total points and fees to determine if the amount exceeded 8% of the loan amount.

2. $350 Appraisal Fee

First, it is unclear to the Court what amount was paid, or at least was charged to the Morrises for the appraisal of their home. In plaintiffs' additional statement of facts, they state that Mr. Morris was not informed that he was being charged $575 for the appraisal of the house.

6

Yet, in plaintiffs' argument section of their brief, they argue that NovaStar failed to include a charge of a $350 appraisal fee as a point and fee in its calculations. As a charge of $575 was sworn to in Mr. Morris's affidavit, the Court will accept this amount as the amount charged for the appraisal.

Plaintiffs contend that the $575 appraisal fee should have been included in the calculation of total points and fees. Defendants contend that the plain language of TILA's regulations specifically exempt property appraisal fees from the definition of finance charges if the service is performed prior to closing. 12 C.F.R. § 226.4(c)(7)(iv). While it is true that the regulations exempt the appraisal fee, it only does so if the fees are "bona fide and reasonable in amount." Id. at § 226.4(c)(7). In this case, plaintiffs submitted an affidavit of a Missouri Residential Certified Appraiser that a $575 charge would be an unreasonable charge for an appraisal of a typical single-family resident in Kansas City, Jackson County, Missouri. Therefore, the Court finds that the plaintiff has come forth with sufficient evidence, by affidavit, that the $575 charge was unreasonable. Accordingly, the appraisal fee of $575 is not exempted from TILA's regulations. The $575 appraisal fee should have been included in the total amount of points and fees to determine if the amount exceeded 8% of the loan amount.

Based on the above, the Court need make no determination as to whether the $37.00 filing fee is a point or fee under the Regulations. Based on the Court's determinations the total points and fees exceed 8% of the loan amount, such that the protections of HOEPA are triggered. The total settlement charges, including the $1,000 judgment and the $575 appraisal fee total $4,939.90. The principal amount of the new loan was $55,250.00. Therefore, the total points and fees needed for the HOEPA trigger would be $4,420.00. The points and fees in this case

7

exceed that amount. Accordingly, plaintiffs' HOEPA claim is proper.

B. Count II - Violation of the Truth In Lending Act

Count II of the Plaintiffs' Amended Complaint alleges that NovaStar failed to provide disclosures prior to consummation of the loan, failed to provide both plaintiffs with two copies of the notice of their right to rescind the transaction, and failed to accurately disclose the finance charge, the amount financed, and the annual percentage rate. See 15 U.S.C. §§ 1638(a), 1635(a). The disclosures required by TILA must be provided before consummation of the transaction. 12 C.F.R. § 226.17(b). Consummation occurs at "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). Consummation occurs on the date a borrower signs a binding loan contract. Gaona v. Town & Country Credit, 324 F.3d 1050, 1054 (8th Cir. 2003).

In this case, plaintiffs contend that they did not receive the TILA disclosures of the APR, amount financed, and finance charge at the loan closing until after he had signed most of the loan documents, including the Deed of Trust, which mortgaged his home. It is undisputed that Mr. Morris did receive the TILA disclosures at the closing and signed them.

As the Court has found that this loan falls under the protections of HOEPA, these disclosures should have been provided not less than three business loans before the consummation of the transaction, or the closing date, to comply with the TILA. What disclosures were made and when remain a fact issue. Accordingly, defendant's motion with respect to Count II is denied.

C. Count III & V - Fraud and Negligent Misrepresentation

Counts III and V of Plaintiffs' Amended Complaint alleges that NovaStar misrepresented

various terms of the loan and its provisions. Defendant argues that it is entitled to judgment as a matter of law on these two Counts because of Missouri's economic loss doctrine. Pursuant to the economic loss doctrine, a tort claim is prohibited where a plaintiff's claimed losses are purely economical. R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 828-29 (8th Cir. 1983). There are two exceptions to the economic loss doctrine: (1) claims for fraud; and (2) situations when a person possesses knowledge or skill superior to that of an ordinary person. Murphy v. Northwest Mutual Insurance Co., 2005 WL 1421789, *2-3 (W.D. Mo.). When a plaintiff's damages are proximately caused by a defendant's intentional, false representation, the plaintiff is not barred from recovering economic damages because of the economic loss doctrine. Cunningham v. PFL Life Ins. Co., 42 F.Supp.2d 872, 886 (N.D. Iowa 1999).

Whether defendant's economic loss argument prevails depends on whether the fraud exception applies. Count III of the Amended Complaint alleges fraud. Defendant argues that plaintiffs' fraud claim does not qualify as an exception to the economic loss doctrine and should be dismissed for failing to state an essential element and/or failure to plead the claim with particularity pursuant to Federal Rule of Civil Procedure 9(b).

To state a fraud claim under Missouri law, a plaintiff must show the following: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of its truth; (5) the speaker's intent that it should be acted upon by the hearer in a manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's proximately caused injury. Toghiyany v. American Propane, Inc., 309 F.3d 1088, 1092 (8th Cir. 2004). A plaintiff must plead every element of fraud and failure to plead any

of the nine essential elements of fraud renders the claim defective and subject to dismissal. Arnold v. Erkmann, 934 S.W.2d 621, 626 (Mo. App. 1996).

Defendant contends that plaintiffs' fraud claim is based on various representations made by Tracie Trussell, an employee of Columbia and that all representations made to the Morrises regarding the purported terms of the loan were made by Columbia, not NovaStar. Plaintiffs make allegations that Columbia's conduct was an agent for, and within the scope of the its agency for NovaStar. Defendant NovaStar vehemently disputes this assertion and contends that there was in fact no agency relationship, as evidenced by the express terms of the Brokerage Contract signed by the Morrises on June 25, 2004, as well as the Broker Agreement signed by representatives of both NovaStar and Columbia. Def. Ex. B & L. Upon review of all exhibits submitted by the parties, it appears that Mr. Morris signed two documents on June 25, 2004; one was the Brokerage Contract that stated that Columbia was acting as an agent on behalf of the plaintiff, and the other a Mortgage Loan Origination Agreement which stated that Columbia was in fact *not* acting as an agent on behalf of the plaintiff, but rather was acting as an independent contractor. See Def. Ex. B & Pl. Ex. 4. The Court is mindful though that NovaStar is arguing that this is not their problem so to speak - that these were all representations made by Columbia, not NovaStar. The Court disagrees.

"In determining whether an agency relationship exists, the primary issue is the principal's right to control the agent." Gunderson v. ADM Investor Servs., Inc., 2000 U.S. App. LEXIS 20971, at *5 (8th Cir. 2000). An agent's authority may be express, implied, or apparent. Actual authority exists if the principal has given the agent authority to act on its behalf either expressly or by implication. ASA-Brandt, Inc. v. ADM Investor Servs., 344 F.3d 738, 749 (8th Cir. 2003).

Apparent authority is "determined by what the principal does, rather than by any acts of the agent. Id. "Apparent authority is the power held by an agent or any other actor to affect a principal's legal relations with a third party when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id. (quoting Restatement (Third) of Agency § 2.03). As discussed in the Brandt case, "the existence of documents disclaiming an agency relationship only negates the existence of actual authority; it does not however, affect the creation of an agency relationship through apparent authority." Brandt, 344 F.3d at 749-50.

In this case, there is a Broker Agreement signed by both NovaStar and Columbia that disclaims an agency relationship between the two parties. There is at least a genuine issue of material fact as to whether there was an agency relationship created by apparent authority between Columbia and NovaStar, such that NovaStar may be held liable for Columbia's fraudulent misrepresentations. At this point in the case, it is clear from the Broker Agreement that NovaStar exercised significant control over the dealings of Columbia with third parties. Plaintiffs have also come forward with contradictory evidence as to whether Columbia was in fact acting as an agent on their behalf. Viewing these facts in favor of the non-moving party, the Court will deny summary judgment with respect to NovaStar's liability to the Morrises for Columbia's alleged fraudulent conduct. The Court believes that plaintiffs' fraud claim is pled with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b).

The Court also finds that plaintiffs' negligent misrepresentation claims survives summary judgment. To state a claim for negligent misrepresentation, a plaintiff must plead facts that establish: (1) that the speaker supplied information in the course of his business or some other

11

pecuniary business; (2) that, due to the speaker's failure to exercise reasonable care of competence in obtaining or communicating information, the information was false; (3) that the speaker intentionally provided information for the guidance of a limited group of persons in a particular transaction; (4) that the listener justifiably relied on the information; and (5) that as a result of the listener's reliance on the information, he suffered pecuniary loss. In Home Health, Inc. v. Prudential Ins. Co. of America, 101 F.3d 600 (8th Cir. 1996). Defendant alleges that plaintiffs fail to plead that NovaStar supplied information to plaintiffs in the course of its business, that because of a failure by NovaStar to exercise reasonable care, the information was false and that plaintiffs relied on any representation by NovaStar. The Court disagrees. Plaintiffs have come forward with evidence, specifically representations made by NovaStar on the loan documents, that create a fact issue as to whether the information was in fact the information previously provided to the Morrises, and whether the plaintiffs relied on this false information to initially agree to the terms of the loan. Further, as discussed above, there is a fact issue as to whether there was an agency relationship between Columbia and NovaStar.

Accordingly, plaintiffs' fraud claim survives summary judgment and is therefore an exception to the economic loss rule. Furthermore, plaintiffs' negligent misrepresentation claim survives summary judgment.

D. Count IV - Violation of the Missouri Merchandising Practices Act

Count IV of Plaintiffs' Amended Complaint alleges that defendant NovaStar violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 ("the Act"). The Act makes it unlawful to use any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, concealment, suppression, or omission of any material fact in connection with the sale

or advertisement of any merchandise. Id.

The Court finds that there is a genuine issue of material fact as to whether NovaStar violated the Act. As discussed above, there remains a fact issue as to whether there was an agency relationship between Columbia and NovaStar.

IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendant Novastar Mortgage, Inc.'s Motion for Summary Judgment (Doc. # 22) is denied. It is further

ORDERED that NovaStar's Second Consent Motion for Extension of Time to Reply in Support of its Motion for Summary Judgment (Doc. # 32) is dismissed as moot.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: September 19, 2006